# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **CHRISTOPHER C. SOLOMON,** | ) | |
| **#585205,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | **Case No. 3:23-cv-00133** |
| **v.** | ) | **Judge Trauger** |
| | ) | |
| **JOHNNY FITZ, Warden,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## MEMORANDUM

### I. Introduction

In early 2023, state inmate Christopher Solomon filed a pro se Petition for the Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. No. 1) and paid the filing fee. (Doc. No. 7.) He challenges his conviction and aggregate 33-year prison sentence in Sumner County, Tennessee, following his guilty plea to charges of aggravated vehicular homicide (25 years), aggravated vehicular assault (6 years), and leaving the scene of an accident (2 years). (Doc. No. 1 at 1.) After being directed to respond to the Petition, the respondent filed the transcript of proceedings in state court (Doc. No. 9) and an Answer. (Doc. No. 10.)

The Answer was filed on May 11, 2023. Seventeen months later, on October 15, 2024, the court received a letter from the petitioner advising that he never received service copies of the state court record or the respondent's Answer. (Doc. No. 11.) In that letter, the petitioner asked the court "to advise the State to serve me with the copy of D.E. # 9 and 10, and allow me to file a REPLY accordingly pursuant to the Rule 5 of the Rules Gover[n]ing 2254." (*Id.*)

Rule 5 permits a reply to the respondent's answer within the time set by "[t]he judge" or "by local rule." Rule 5(e), Rules Gov'g § 2254 Cases. The order setting the briefing schedule in

this case (Doc. No. 8) was filed on April 12, 2023. It established a 30-day deadline for responding to the Petition, followed by another 30 days for the petitioner to file any reply to that response. (*Id.* at 1, 2.) The respondent's Answer was timely filed. In his October 2024 letter, the petitioner claims to have received "nothing from the Court nor the State" since he paid the filing fee on April 10, 2023, two days before the scheduling order entered. (Doc. No. 11.) Regardless, neither the petitioner's letter nor the claims of his Petition convince the court of the need to allow him to file a Reply at this late date.

Upon review of the Petition, the Answer, and the state-court record, the court finds that an evidentiary hearing is not required to resolve this matter, as "the record clearly indicates that the petitioner's claims are either barred from review or without merit." *Stanford v. Parker*, 266 F.3d 442, 459 (6th Cir. 2001). As explained below, the petitioner is plainly not entitled to habeas relief, and the Petition will therefore be denied.

## II. Procedural History

The petitioner entered an open guilty plea to aggravated vehicular homicide, aggravated vehicular assault, and leaving the scene of an accident. The accident—which resulted from the petitioner's most recent episode of driving while intoxicated—occurred on October 15, 2016. The events of that fateful day and the proceedings that followed are described in the 2018 opinion of the Tennessee Court of Criminal Appeals (TCCA) in *State v. Solomon*, No. M2018-00456-CCA-R3-CD, 2018 WL 5279369 (Tenn. Crim. App. Oct. 23, 2018), and set out in relevant part below. In summary, the petitioner received the maximum sentence within the applicable range for each of the three offenses to which he pled guilty, and those sentences were ordered to run consecutively; he appealed his 33-year aggregate sentence, arguing that it was excessive; and he

2

followed this unsuccessful direct appeal with a post-conviction challenge to the effectiveness of his representation before the trial court, which was also unsuccessful.

The petitioner then filed this federal habeas action, raising claims of ineffective assistance of counsel and excessive sentencing. In answering those claims, the respondent argues that only one ineffective-assistance claim was properly exhausted and is therefore available for federal review, while the excessive-sentencing claim, though litigated before the TCCA, is not properly pled in this court as it is not supported by any factual allegations. The court will address these claims and arguments following a review of the facts relevant to them.

### III. Facts

The following statement of facts is taken from the TCCA's decisions on direct and post-conviction appeal. First, with regard to the petitioner's offenses and their aftermath, the TCCA explained as follows (referring to the petitioner as "the Defendant"):

> On a Saturday afternoon in October 2016, the Defendant struck the [pedestrian] victims, Mr. Robert Pyles and Ms. Dineen Cottrell, with his car while intoxicated and then fled the scene. Mr. Pyles died as a result of his injuries, and Ms. Dineen Cottrell sustained serious injuries. The Defendant was charged with aggravated vehicular homicide while having at least two prior convictions for driving under the influence ("DUI"), a Class A felony; aggravated vehicular assault while having at least two prior DUI convictions, a Class C felony; and leaving the scene of an accident resulting in death, a Class E felony. *See* T.C.A. §§ 39-13-115(b)(1), (e); 39-13-218(a)(1), (d); 55-10-101(a), (b)(2)(A). The Defendant entered guilty pleas to the charges with the sentences to be determined by the trial court.
>
> During the guilty plea hearing, the State summarized the factual basis for the pleas, including the fact that the Defendant struck the victims and then fled the scene. The responding officers located the Defendant behind the wheel of his car. The damage to the hood and windshield of the car was consistent with witnesses' statements regarding how the accident occurred. Officers transported the Defendant to the Hendersonville Police Department where he was interviewed.
>
> During the interview, the Defendant was lethargic, sweating profusely, unable to keep his eyes open, moving his head back and forth, and licking his lips as if his mouth was dry. When the police officer asked the Defendant what he had taken, the Defendant made several unintelligible responses. Finally, the officer was able

to determine that the Defendant had taken Percocet earlier that day. The Defendant stated that he did not remember hitting anyone and that he believed he had hit a deer or a mailbox. The officer attempted to conduct a horizontal gaze nystagmus test, but the Defendant was unable to follow the officer's pen and continued to stare forward. When the officer left the room to obtain an implied consent form for a blood draw, the Defendant fell asleep and fell out of his chair.

The Defendant consented to a blood draw. The results of the blood test revealed 64 nanograms per milliliter of alprazolam [(Xanax)], less than 0.05 micrograms per milliliter of amphetamine, and 447 nanograms per milliliter of benzoylecgonine. The Defendant had two prior DUI convictions, one in December 2013 and the other in May 2015. The trial court accepted the Defendant's guilty pleas.

*State v. Solomon*, 2018 WL 5279369, at *1.

At the petitioner's sentencing hearing, Hendersonville Police Officer Chris Rapp testified that he received a call on the day of the accident and "was told that the victims were walking to a yard sale near their home when the Defendant struck them from behind with his car and fled the scene. The responding officers located the Defendant less than one-half mile away sitting in his car and eating grapes." *Id.* "The Defendant told the officers that as he was driving over a hill, the sunlight prevented him from seeing clearly, that he believed he struck either a mailbox or an animal, and that he left the scene because he was frightened." *Id.* The State also introduced further proof at the sentencing hearing of the petitioner's history with the criminal justice system, as follows:

The State presented certified judgments of the Defendant's prior convictions for DUI in Nevada in 2008, DUI second offense in Nevada in 2009, theft of property valued at less than $500 in 2012, DUI second offense in 2012, solicitation to file a false report in 2013, DUI second offense in 2013, public intoxication in 2015, vandalism of property valued at less than $500 in 2015, shoplifting in 2015, theft of property valued at less than $500 in 2016, and possession of a Schedule IV controlled substance in 2016. The Defendant's probation had been revoked on multiple occasions.

Mr. Carson Bumbalough, a probation officer who supervised those enrolled in the DUI Court Program in Sumner County, testified that the Defendant entered the program in December 2013 and successfully completed the program. Prior to entering the program, the Defendant had a prior DUI conviction for which he

4

received probation and treatment for alcohol/drug dependence. While enrolled in the program, he received inpatient treatment for alcohol abuse and attended meetings to address drug and alcohol abuse. He used pills and had drug screens that were positive for amphetamine. Mr. Bumbalough said those issues were addressed within the program. He also said the Defendant was the only graduate of the program who had later been convicted of vehicular homicide.

In August 2015, the general sessions court revoked the Defendant's probation as a result of new charges for shoplifting, vandalism, and public intoxication, and the court ordered him to serve eleven months and twenty-nine days in confinement. The Defendant "flattened" his sentence while incarcerated. He was placed on probation in May 2016 after he was convicted of possession of a Schedule IV controlled substance and theft. He was on probation when he committed the offenses in the instant case, and his probation was revoked as a result.

*Id.* at *4.

In sentencing the petitioner, the trial court rejected a "risk and needs assessment" that had been provided to the probation officer who prepared the petitioner's presentence report. That assessment identified the petitioner as a low risk to reoffend despite his extensive criminal history involving substance abuse, and the trial court determined that the assessment was "slanted and bogus," "irrelevant," and "about as worthless and insensitive to what happened here as you can get." *Id.* at *4–5. Then,

[i]n examining the circumstances of the offenses, the trial court stated that the Defendant drove in the daytime while under the influence and that he was so intoxicated that he was unable to stay awake, was unaware of what had occurred, drove away from the scene, and was located in his parked car eating grapes approximately one block away from the scene. The trial court stated that Mr. Pyles died as a result and that Ms. Dineen Cottrell was in a coma and could have died. The trial court found that the Defendant's conduct affected generations of the victims' family and that the victims' family unit was "totally wiped out."

The trial court found that the Defendant's four prior DUI convictions had not deterred him from driving while intoxicated. The trial court reviewed the Defendant's extensive criminal history and found that the Defendant's potential for rehabilitation was "slim to none."

. . .

5

Upon finding that the Defendant had an extensive record of criminal activity, the trial court ordered the Defendant to serve his sentences consecutively to each other and to a sentence from a prior conviction in general sessions court for an effective sentence of thirty-three years in confinement. The trial court also banned the Defendant from driving a vehicle for the remainder of his life.

*Id.* at *5.

On post-conviction review, the TCCA reviewed the facts pertinent to the one claim raised on post-conviction appeal—that counsel was ineffective in failing to seek recusal of the trial judge who sentenced the petitioner, based on the petitioner's previous appearance before that judge when both were involved in the Sumner County DUI court program. (*See* Doc. No. 9-13, Appellant's Brief.) The TCCA summarized the facts before it as follows:

The Petitioner asserted that trial counsel should have sought recusal because the trial judge realized that the Petitioner had participated in the DUI court program and that the judge demonstrated bias by stating at the sentencing hearing, "This is a pretty big hit on the program." The post-conviction petition was heard by the same judge who had accepted the guilty pleas and imposed the sentences, and the Petitioner did not seek recusal at the post-conviction hearing.

At the post-conviction hearing, the Petitioner testified that he participated in the DUI court program for approximately one year and successfully completed the program. The program consisted of evening activities Monday through Friday. Once a week, he met with the presiding judge or judges, and the other weekly meetings consisted of classes or group activities. According to the Petitioner, the trial judge was one of the judges who presided over the program while he attended. The Petitioner stated that the trial judge presided over the program sometimes but not every time. On cross-examination, he said he did not know how many times the trial judge presided over the program. He stated that the trial judge once sanctioned him for failing a drug test while he was in the program. The Petitioner believed he told trial counsel that he had previously participated in the program. He stated that the trial judge made findings at the sentencing hearing relating to his participation in the program and his failure to maintain sobriety since completing the program. He believed trial counsel should have sought recusal and a hearing to determine whether the trial judge possessed extraneous information about his participation. In response to the post-conviction court's questioning, the Petitioner agreed that he deserved to be sanctioned during his time in the program and that he was treated similarly to other program participants.

Trial counsel stated that the Petitioner's participation in the DUI court program "was not on [his] radar" until Mr. Bumbalough testified at the sentencing hearing.

6

He stated that he did not have any records showing that he and the Petitioner discussed the Petitioner's treatment in the program. Trial counsel explained that one of the judgments of prior conviction he would have reviewed after being appointed to represent the Petitioner contained a condition of probation requiring treatment in the program. However, trial counsel stated that he would have reviewed the prior judgments for "validity," relevance to enhancement, factual allegations, whether the judge signed the judgments, and whether counsel was waived. He asserted that he would not have reviewed the Petitioner's conditions of probation listed in the prior judgments. He agreed that he was aware the trial judge was involved in the program, but he could not recall whether he knew at the time of sentencing that the Petitioner had been in the program. Trial counsel stated that he knew the Petitioner's participation in the program "was certainly an issue," but he did not "know if it struck [him] at that point . . . that there had been interactions between [the Petitioner] and [the trial judge] through the course of the program that would be an issue." He did not recall "it even striking" the trial judge that the Petitioner had been in the program.

Trial counsel stated that he did not seek recusal because the Petitioner had completed the program, and trial counsel did not believe that it would have been "per se grounds for recusal." He agreed that he could have requested recusal, but he did not know if it would have been successful. He believed the fact that the Petitioner completed the program "mattered a lot to the court" but did not perceive the trial judge as "remember[ing] any interaction with the Petitioner during his time in the [program]." He agreed that he could have explored the extent of the trial judge's recollection of the Petitioner or consulted the Petitioner about it but he did not. On cross-examination, trial counsel stated that he did not believe it was necessary to seek recusal of the trial judge. A judgment form for a DUI second offense conviction dated December 17, 2013, was entered as an exhibit to the post-conviction hearing and showed that the Petitioner was ordered to attend the DUI court program as a condition of probation.

The post-conviction court made a general credibility finding in favor of trial counsel and against the Petitioner. The post-conviction court found that the Petitioner's participation in the program was relevant to both deterrence and amenability to rehabilitation. The court found that the Petitioner agreed that the court did not exhibit bias or prejudice toward the Petitioner prior to imposing the sentences. The judge also noted that he was unaware until the time of the post-conviction hearing that he had previously sanctioned the Petitioner during the DUI court program. The judge stated that he "wouldn't know him from any other defendant," noting that a number of years passed between the Petitioner's participation in the program and the offenses underlying the present case. The court credited trial counsel's testimony that he did not seek recusal because he did not perceive the trial judge as biased or prejudiced. In the written order denying post-conviction relief, the court reiterated it had no recollection of the Petitioner or of the details surrounding his participation in the program.

7

*Solomon v. State*, No. M2021-00739-CCA-R3-PC, 2022 WL 1510884, at *2–3 (Tenn. Crim. App. May 13, 2022).

## IV. Claims Presented

The Petition asserts the following claims to habeas relief:

1.     Trial counsel was ineffective in failing to seek recusal of the sentencing judge.

2.     The petitioner received an excessive sentence.

(Doc. No. 1 at 4–6.)

Attached to the Petition is a "Statement of Facts" (Doc. No. 1-1) that contains the following additional claim and sub-claims:

3.     The following substantial claims of ineffective assistance of trial counsel were procedurally defaulted due to post-conviction counsel's ineffective failure to preserve them for post-conviction appeal:

a.  Failure to challenge the admissibility of the toxicology report and its inclusion in the presentence report;

b.  Failure to file a motion to suppress the results of the non-consensual blood test;

c.  Failure to offer proof at the sentencing hearing of the petitioner's potential for rehabilitation;

d.  Failure to include among grounds for appealing the petitioner's consecutive sentencing that the State had agreed to concurrent sentencing in the Sumner County General Sessions Court;[1]

e.  Failure to challenge the propriety of the TBI agent's testimony regarding the facts of the drugs in the petitioner's blood;

---

[1] As the respondent points out, this does not appear to be a claim of trial counsel's ineffectiveness, but a claim of ineffective assistance of appellate counsel. The same attorney represented the petitioner at both the trial and direct appeal levels.

f.  Failure to challenge the trial court's improper calculation of pretrial jail credits; and

g.  Failure to seek to withdraw the petitioner's guilty plea when the State failed to honor its previous agreement to concurrent sentencing.

(Doc. No. 1-1 at 10–14.)

## V. Analysis

A. <u>Legal Standard</u>

The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). A federal court may grant habeas relief to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Upon finding a constitutional error on habeas corpus review, a federal court may only grant relief if it finds that the error "had substantial and injurious effect or influence" upon the conviction. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *Peterson v. Warren*, 311 F. App'x 798, 803–04 (6th Cir. 2009).

AEDPA was enacted "to reduce delays in the execution of state and federal criminal sentences, particularly in capital cases . . . and 'to further the principles of comity, finality, and federalism.'" *Woodford v. Garceau*, 538 U.S. 202, 206 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 436 (2000)). AEDPA's requirements "create an independent, high standard to be met before a federal court may issue a writ of habeas corpus to set aside state-court rulings." *Uttecht v. Brown*, 551 U.S. 1, 10 (2007) (citations omitted). The Supreme Court recently explained this "high standard" as follows:

> AEDPA sharply limits federal review of habeas claims raised by state prisoners. A federal court may grant habeas relief on a claim that a state court resolved on the merits only when the state court's "decision" was "contrary to, or involved an unreasonable application of, clearly established Federal law," or "was based on an

9

unreasonable determination of the facts in light of the evidence presented" in state court. 28 U.S.C. § 2254(d). These standards require federal courts to give the "benefit of the doubt" to merits decisions issued by the courts of the sovereign States. *Woodford v. Visciotti*, 537 U.S. 19, 24, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (per curiam). AEDPA review provides an important but limited safeguard: It protects against "'extreme malfunctions'" in the state courts' adjudication of constitutional claims. *Harrington v. Richter*, 562 U.S. 86, 102, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011). So in order to obtain federal habeas relief, a state prisoner must "show far more" than "'clear error.'" *Shinn v. Kayer*, 592 U.S. 111, 118, 141 S.Ct. 517, 208 L.Ed.2d 353 (2020) (per curiam) (quoting *Virginia v. LeBlanc*, 582 U.S. 91, 94, 137 S.Ct. 1726, 198 L.Ed.2d 186 (2017) (per curiam)). The habeas claimant must instead establish that the state court "blunder[ed] so badly that every fairminded jurist would disagree" with the decision. *Mays v. Hines*, 592 U.S. 385, 392, 141 S.Ct. 1145, 209 L.Ed.2d 265 (2021) (per curiam). Only then is a decision "so lacking in justification" that its error precludes even the "possibility for fairminded" dispute. *Richter*, 562 U.S. at 103, 131 S.Ct. 770.

"If this rule means anything," we have said, it means that a federal court must "carefully consider all the reasons and evidence supporting the state court's decision." *Mays*, 592 U.S. at 391, 141 S.Ct. 1145. That requirement is pivotal because federal courts have "no authority to impose mandatory opinion-writing standards on state courts." *Johnson v. Williams*, 568 U.S. 289, 300, 133 S.Ct. 1088, 185 L.Ed.2d 105 (2013). And a state court "need not make detailed findings addressing all the evidence before it." *Miller-El v. Cockrell*, 537 U.S. 322, 347, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003). Indeed, AEDPA requires deference even if the state court does not discuss the evidence at all. *Richter*, 562 U.S. at 99, 131 S.Ct. 770….

*Klein v. Martin*, No. 25–51, 2026 WL 189976, at *4 (U.S. Jan. 26, 2026).

A state court's decision is "contrary to" clearly established federal law under Section 2254(d)(1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). An "unreasonable application" under this subsection occurs when "the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *White v. Woodall*, 572 U.S. 415, 426 (2014). The standard here is objective unreasonableness, as determined by scrutinizing

the state court decision for whether it is "so lacking in justification" that no fairminded jurist could disagree that it was erroneous. *Harrington*, 562 U.S. at 103.

Similarly, a federal habeas court may not find a state court's factual determination to be unreasonable under Section 2254(d)(2) simply because it subjectively disagrees with the determination and therefore "would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010); *see Young v. Hofbauer*, 52 F. App'x 234, 237 (6th Cir. 2002). Rather, the determination must be "objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). This is "a daunting standard." *McMullan v. Booker*, 761 F.3d 662, 672 (6th Cir. 2014) (quoting *Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004)). "If reasonable minds reviewing the record might disagree about the finding in question, on habeas review that does not suffice to supersede the trial court's . . . determination." *Brumfield v. Cain*, 576 U.S. 305, 314 (2015) (quoting *Wood*, 558 U.S. at 301) (internal quotation marks omitted). Moreover, a state court's factual determinations "shall be presumed to be correct" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Davis v. Ayala*, 576 U.S. 257, 271 (2015) ("State-court factual findings . . . are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.'") (quoting *Rice v. Collins*, 546 U.S. 333, 338–39 (2006)). Finally, the petitioner may not prevail under Section 2254(d)(2) simply by showing that a fact was unreasonably determined; he "must show that the resulting state court decision was 'based on' that unreasonable determination." *Rice v. White*, 660 F.3d 242, 250 (6th Cir. 2011).

Review under AEDPA is not only demanding, but also ordinarily unavailable to state inmates who have not fully exhausted their remedies in the state court system. Sections 2254(b)

11

and (c) provide that, subject to certain exceptions, a federal court may not grant a writ of habeas corpus on behalf of a state prisoner unless the prisoner previously presented the same claim to the state courts that he currently presents in federal court. *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011); *Kelly v. Lazaroff*, 846 F.3d 819, 828 (6th Cir. 2017) (quoting *Wagner v. Smith*, 581 F.3d 410, 417 (6th Cir. 2009)) (federal claim is exhausted if it was presented "under the same theory" in state court). A habeas petition is thus fully exhausted if each and every claim was first fairly presented to the state appellate court[2] as a federal constitutional claim in substance, if not explicitly. *See Gray v. Netherland*, 518 U.S. 152, 162–63 (1996); *Pillette v. Foltz*, 824 F.2d 494, 496 (6th Cir. 1987) (requiring the presentation of "the legal and factual substance of every claim to all levels of state court review").

However, because the exhaustion requirement "refers only to remedies still available at the time of the federal petition," it may also be "satisfied if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law." *Gray*, 518 U.S. at 161 (citations and internal quotation marks omitted). The doctrine of procedural default is thus a corollary to the rule of exhaustion, one which ordinarily bars habeas review of claims that were not "fairly presented" for merits review in state court, either because they were presented in a way that failed to comport with state procedural rules or because they were not presented at all and no longer can be presented under state law. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) (acknowledging "the interplay of these two doctrines" and stating that, to avoid an end-run around the exhaustion requirement and "the values that it serves," "we ask not only whether a prisoner has exhausted his state remedies, but also whether he has *properly* exhausted those remedies, i.e., whether he has fairly

---

[2] In Tennessee, the Court of Criminal Appeals is the highest appellate court to which appeal must be taken in order to properly exhaust a claim. *See* Tenn. Sup. Ct. R. 39; *Adams v. Holland*, 330 F.3d 398, 402–03 (6th Cir. 2003).

presented his claims to the state courts") (emphasis in original; internal citations and quotation marks omitted). If the state court decides a claim on "adequate and independent state grounds"— typically a procedural rule prohibiting the state court from reaching the merits of the constitutional claim—the claim will ordinarily be barred from federal habeas review because of its procedural default. *Wainwright v. Sykes*, 433 U.S. 72, 81–82 (1977*); see also Walker v. Martin*, 562 U.S. 307, 315 (2011) ("A federal habeas court will not review a claim rejected by a state court if the decision of the state court rests on a state law ground that is independent of the federal question and adequate to support the judgment."); *Coleman v. Thompson*, 501 U.S. 722 (1991) (same). Likewise, if a claim has never been presented to the state courts, but a state-court remedy is no longer available (e.g., when an applicable statute of limitations bars a claim or state law deems the claim waived),[3] then the claim is technically (though not properly) exhausted but barred by procedural default. *Coleman*, 501 U.S. at 731–32.

If a claim is procedurally defaulted, "federal habeas review of the claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Id.* at 750. The burden of showing cause and prejudice to excuse defaulted claims is on the habeas petitioner. *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999) (citing *Coleman*, 501 U.S. at 754). "'[C]ause' under the cause and prejudice test must be something *external* to the petitioner, something that cannot fairly be attributed to him[,] . . . some

---

[3] The Tennessee Post-Conviction Procedure Act provides that "[i]n no event may more than one (1) petition for post-conviction relief be filed attacking a single judgment," and establishes a one-year statute of limitations for filing that one petition. Tenn. Code Ann. § 40-30-102(a) and (c). The Act further provides that "[a] ground for relief is waived if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented," unless that ground could not be presented due to unconstitutional state action, or is based on a new and retroactive constitutional right that was not recognized at the time of trial. *Id.* § 40-30-106(g).

objective factor external to the defense [that] impeded . . . efforts to comply with the State's procedural rule." *Coleman*, 501 U.S. at 753 (emphasis in original). Examples of cause include the unavailability of the factual or legal basis for a claim, interference by officials that makes compliance "impracticable," or attorney error that violates the right to counsel's effective assistance. *Id.* at 753–54. To establish prejudice, a petitioner must demonstrate that the constitutional error asserted in his defaulted claim "worked to his actual and substantial disadvantage." *Perkins v. LeCureux*, 58 F.3d 214, 219 (6th Cir. 1995) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)); *see also Ambrose v. Booker*, 684 F.3d 638, 649 (6th Cir. 2012) (finding that "having shown cause, petitioners must show actual prejudice to excuse their default"). "When a petitioner fails to establish cause to excuse a procedural default, a court does not need to address the issue of prejudice." *Simpson v. Jones*, 238 F.3d 399, 409 (6th Cir. 2000). Likewise, if a petitioner cannot establish prejudice, the question of cause is immaterial.

Because the cause and prejudice standard is not a perfect safeguard against fundamental miscarriages of justice, the United States Supreme Court has recognized a "narrow exception" to the bar of an unexcused default in cases where a constitutional violation has "probably resulted" in the conviction of one who is "actually innocent" of the substantive offense. *Dretke v. Haley*, 541 U.S. 386, 392–93 (2004) (citing *Murray v. Carrier*, 477 U.S. 478, 495–96 (1986)); *accord Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006). To obtain habeas review under this narrow exception to the procedural-default rule, the petitioner would need to demonstrate his factual innocence, not the mere legal insufficiency of the State's proof; a miscarriage-of-justice claim is not supported by an assertion of mere legal innocence. *Lee v. Brunsman*, 474 F. App'x 439, 442 (6th Cir. 2012) (citing *Bousley v. United States*, 523 U.S. 614, 623 (1998), and *Calderon v. Thompson*, 523 U.S. 538, 559 (1998)).

14

B. <u>Review of the Petition</u>

1. Failure to file motion for recusal

The petitioner claims that he received the ineffective assistance of counsel when his attorney at sentencing failed to seek the recusal of the trial judge, due to that judge's role with the Sumner County DUI court program during the time when the petitioner was a participant in the program. He argues that the judge's impartiality was brought into question, and that recusal should have been sought, when the judge stated at the sentencing hearing—upon realizing that the petitioner had been in the DUI court program and successfully completed it—that "[t]his [case] is a pretty big hit on the program." (Doc. No. 1-1 at 19; Doc. No. 9-3 at 154.)

The Sixth Amendment to the U.S. Constitution "guarantees that 'at trial and on direct . . . appeal every criminal defendant will have access to a lawyer to assist with his or her defense,'" and that the lawyer's assistance will be effective. *Muniz v. Smith*, 647 F.3d 619, 622 (6th Cir. 2011) (quoting *Nichols v. United States*, 563 F.3d 240, 248 (6th Cir. 2009)). Claims of ineffective assistance are properly analyzed under the two-prong standard of *Strickland v. Washington*, 466 U.S. 668 (1984), which asks: (1) whether counsel was deficient in representing the petitioner; and (2) whether counsel's alleged deficiency prejudiced the defense so as to deprive the petitioner of a fair trial. *Id.* at 687. To meet the first prong, the petitioner must establish that his attorney's representation "fell below an objective standard of reasonableness," and must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, [he] must overcome the presumption that . . . the challenged action 'might be considered sound trial strategy.'" *Id.* at 688–89 (quoting *Michel v. State of La.*, 350 U.S. 91, 101 (1955)). The "prejudice" component of the claim "focuses on the question of whether counsel's deficient performance renders the result of the . . . proceeding fundamentally unfair." *Lockhart v.*

15

*Fretwell*, 506 U.S. 364, 372 (1993). It requires a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

Where, as here, an exhausted claim of ineffective assistance of counsel is raised in a federal habeas petition, review under AEDPA is "doubly deferential," *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009), in that "*Strickland* requires deference to counsel and AEDPA requires deference to the state court." *Moody v. Parris*, No. 20-5299, 2022 WL 3788503, at *4 (6th Cir. Aug. 30, 2022). The question on habeas review, then, is not whether the petitioner's counsel was ineffective, but "whether the state court's application of the *Strickland* standard was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 101 (2011).

In this case, the TCCA on post-conviction appeal analyzed the recusal issue under *Strickland*. *See Solomon v. State*, 2022 WL 1510884, at *3–6. That analysis is set out below.

> In the present case, the Petitioner argues that trial counsel should have sought recusal at sentencing because the trial judge realized that the Petitioner had participated in the DUI court program and that the judge demonstrated bias by stating at the sentencing hearing, "This is a pretty big hit on the program." "Tennessee litigants are entitled to have cases resolved by fair and impartial judges." *Cook v. State*, 606 S.W.3d 247, 253 (Tenn. 2020) (citations omitted). In *State v. Brent R. Stewart*, the defendant was sentenced to probation originally but agreed to enroll in the drug court treatment program as part of an agreement following his violating the terms of probation. No. W2009-00980-CCA-R3-CD, 2010 WL 3293920, at *3 (Tenn. Crim. App. Aug. 18, 2010). The judge presiding over the defendant's drug treatment program imposed sanctions, including significant jail time, and ultimately expelled him from the program. *Id.* at *4. Based on the defendant's expulsion from the program, the same judge held a probation revocation hearing during which the defendant sought recusal based on the judge's participation in his drug court treatment. *Id.* The judge declined to recuse himself despite acknowledging that the "defendant had raised a valid issue regarding his level of involvement with the subject matter." *Id.* We concluded that "the Due Process Clause does indeed bar any member of the defendant's drug court from adjudicating a subsequent parole revocation *when the violations or conduct at issue in both forums involves the same or related subject matter.*" *Id.* at *4 (emphasis in

16

original). Thus, we determined that the judge's involvement in both proceedings while possessing ex parte information violated the defendant's right to due process. *Id.* at *13. However, *Brent R. Stewart* is easily distinguishable from the facts presented in the present case on two grounds. First, the record in *Brent R. Stewart* showed that the judge possessed a significant amount of information about the defendant from the drug court in the revocation hearing, while the trial judge in the present case stated he did not remember the Petitioner or any information about the Petitioner. Second, the *Brent R. Stewart* defendant's misconduct in the drug court led to the revocation hearing and thus involved the same or related subject matter. *Id.* The Petitioner in the present case completed the DUI court program as a condition of probation for a prior criminal conviction unrelated to the current convictions. The current convictions and sentencing for those convictions only followed the Petitioner's conduct resulting in new criminal charges years after completion of the program. Therefore, the sentencing hearing following the current convictions did not involve the same or related subject matter as the Petitioner's prior DUI court program.

Following the disposition in *Brent R. Stewart*, our supreme court adopted the revised Code of Judicial Conduct effective July 1, 2012. *See State v. Watson*, 507 S.W.3d 191, 195 (Tenn. Crim. App. 2016). Rule 2.9 of the code concerns the judge's duties when confronted with situations concerning ex parte communications. *See* RJC 2.9. Comment [4] to Rule 2.9 provides that

> A judge may initiate, permit, or consider ex parte communications authorized by law. When serving on a therapeutic or problem-solving court, including but not limited to a mental health court, a drug recovery court, a veteran's court, or a behavioral health recovery oriented compliance docket, judges may assume a more interactive role with parties, treatment providers, probation officers, social workers, and others. However, if this ex parte communication becomes an issue at a subsequent adjudicatory proceeding in which the judge is presiding, the judge shall either (1) disqualify himself or herself if the judge gained personal knowledge of disputed facts under RJC 2.11(A)(1) or the judge's impartiality might reasonably be questioned under RJC 2.11(A) or (2) make disclosure of such communications subject to the waiver provisions of RJC 2.11(C).

Rule 2.11 provides in relevant part that disqualification is necessary where "[t]he judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of facts that are in dispute in the proceeding." RJC 2.11(A)(1). Courts utilize an objective analysis of Rule 2.11, which requires recusal "if 'a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality.'" *Cook*, 606 S.W.3d at 255 (quoting *Davis v. Liberty Mut. Ins. Co.*, 38 S.W.3d 560, 565 (Tenn. 2001)).

17

A panel of this court applied the above rules in *State v. Watson*, to circumstances involving a judge who presided over the defendant's drug court program and subsequently presided over the defendant's probation revocation proceeding arising from the defendant's misconduct in the program. 507 S.W.3d at 197. The judge disavowed any ex parte communication with the defendant and maintained that he had "'absolutely no independent recollection of the defendant.'" *Id.* The defendant's probation was revoked in full following a hearing, and the defendant appealed on the basis that the judge should have recused himself. *Id.* We observed on appeal that there was no proof showing the judge "'gained personal knowledge of disputed facts.'" *Id.* (quoting Tenn. Sup. Ct. Rule 10, RJC 2.9, comment [4]). We also reasoned that the "mere fact that the criminal court judge was also the judge of the drug court does not reasonably call into question the criminal court judge's impartiality." *Id.* Accordingly, we determined that the judge was not disqualified from presiding over the defendant's revocation hearing. *Id.*

The fact that the judge in the present case presided over the DUI court program does not, in itself, require recusal. The Petitioner entered the DUI court program in December 2013 as a condition of probation of a prior conviction, and it is undisputed that he successfully completed the program approximately one year later. Years later, in October 2016, the Petitioner struck the victims with his vehicle while driving under the influence, and new criminal charges were brought against him. Following the Petitioner's pleas of guilt to those charges, the trial court held a sentencing hearing in October 2017. The trial judge presiding over the Petitioner's sentencing hearing also had presided over some of the Petitioner's participation in the DUI court program. Following Mr. Bumbalough's initial testimony, the trial judge stated at the sentencing hearing that he did not know prior to the hearing that the Petitioner had previously completed the DUI court program. The trial judge then questioned Mr. Bumbalough, who in turn testified to various details regarding the Petitioner's participation. Along with other findings unrelated to the Petitioner's program participation, the trial judge weighed the Petitioner's completion of the program negatively in its consideration of deterrence and the Petitioner's amenability to rehabilitation. The Petitioner does not allege on appeal that trial counsel should have sought recusal because the judge possessed ex parte information or "personal knowledge of disputed facts," and we conclude that the judge's mere participation on the DUI court does not require recusal. *See* RJC 2.9, comment [4]; *Watson*, 507 S.W.3d at 197.

The Petitioner also argues that the trial judge's statement that "[t]his is a pretty big hit on the program" evinces the judge's lack of impartiality in his sentencing hearing. We observe that the Petitioner has not offered any basis on which the trial judge's statement could be reasonably construed as indicating a lack of impartiality. Instead, the record reflects that the statement was made in response to Mr. Bumbalough's testimony concerning the Petitioner's completion of the DUI court program. In the post-conviction hearing, the court noted that the Petitioner's completion of the program was an important factor in its consideration of deterrence and the Petitioner's amenability to correction at sentencing. The judge

18

also noted that he did not recognize the Petitioner or remember details of the Petitioner's participation in the program. Accordingly, the Petitioner has failed to show that there was a reasonable basis for questioning the trial judge's impartiality. *See Cook*, 606 S.W.3d at 255. Because there was no actual or reasonable basis for requesting recusal of the trial judge, trial counsel was not deficient for failing to seek recusal of the trial judge. *See Antonio Dewayne Bledsoe v. State*, No. M2004-01132-CCA-R3-PC, 2005 WL 1240172, at *3 (Tenn. Crim. App. May 24, 2005) ("[T]rial counsel cannot be considered deficient for failing to make or pursue a motion that would have been meritless."). Additionally, the Petitioner has not made a showing of prejudice for any failure to request recusal. The Petitioner is not entitled to relief.

*Id.*

This thoroughgoing analysis of the recusal issue is eminently reasonable. The petitioner's arguments and citations to authority on the issue of judicial bias and the statutory duty of a federal judge to recuse when her impartiality might reasonably be questioned (*see* Doc. No. 1-1 at 6–9 (asserting that "a court may rely on the federal recusal statute . . . and cases interpreting its provisions" in determining whether judicial bias violates due process)) are related to but ultimately beside the point. The discrete claim before this court is not that the judge's failure to recuse violated the petitioner's right to due process, but that counsel's failure to raise the issue at sentencing or on direct appeal violated his right to effective assistance. The TCCA concluded that this ineffective-assistance claim failed both prongs of the *Strickland* test, deficient performance and prejudice. Specifically, the TCCA applied Tennessee Supreme Court precedent and distinguished the instant case from those where "the judge possessed ex parte information or personal knowledge of disputed facts," finding that (1) the applicable ethics rules did not require recusal merely because the judge had prior exposure to the petitioner through the DUI court program, and (2) there was, in fact, "no actual or reasonable basis for requesting recusal of the trial judge," so (3) counsel did not perform deficiently in failing to file a recusal motion that would have been meritless, and (4) the petitioner failed to show that he was prejudiced by the lack of such filing. *Solomon v. State*,

2022 WL 1510884, at *3–6. This court must defer to the TCCA's reasonable resolution of this claim. This first claim of the Petition is therefore without merit.

### 2. Excessive sentencing

For its second claim, the Petition simply asserts "Excessive Sentencing," and refers the court to the attached Statement of Facts. (Doc. No. 1 at 5.) As the respondent points out, the Statement of Facts (Doc. No. 1-1) does not even attempt to develop this claim but focuses entirely on the petitioner's ineffective-assistance claims. The respondent thus argues that the excessive sentencing claim is insufficiently pled under Rule 2(c) of the Rules Governing Section 2254 Cases in the United States District Court ("Habeas Rules"). (*See* Doc. No. 10 at 33–34.) The court agrees.

Habeas Rule 2(c) requires more than the Petition provides. Prior to the enactment of Rule 2(c), habeas petitions "frequently contained mere conclusions of law, unsupported by any facts," but "Rule 2(c) is more demanding." *Mayle v. Felix*, 545 U.S. 644, 655 (2005) (citation omitted). As has been previously recognized in this court,

> Habeas Corpus Rule 2(c) requires that a petition must "specify all the grounds for relief available to the petitioner" and "state the facts supporting each ground[.]" Habeas Corpus R. 2(c)(1), (2). This rule "deviates from the 'notice pleading' rules applicable in other federal civil cases" and "mandates that the petitioner at least summarily plead specific facts supporting each claim for relief." 1 Randy Hertz & James S. Liebman, Federal Habeas Corpus Practice & Procedure § 11.6 (7th ed. updated Dec. 2021). A habeas petition that "contain[s] mere conclusions of law, unsupported by any facts" is "obviously deficient" because "it is the relationship of the facts to the claim asserted that is important[.]" Habeas Corpus R. 2(c) advisory committee's note to 1976 adoption. A petitioner's failure to fulfill the pleading requirements of Habeas Rule 2(c) provides an appropriate basis for dismissal. *See, e.g.*, *Guerrero v. Ford*, No. 1:17-cv-00103, 2019 WL 330878, at *12 (M.D. Tenn. Jan. 25, 2019) (dismissing claim under Habeas Rule 2(c) where petitioner "d[id] not set forth any facts to support his allegation . . ."); *Creech v. Taylor*, Civ. Action No. 13-165, 2013 WL 6044359, at *2 (E.D. Ky. Nov. 14, 2013) (dismissing habeas petition containing only "[c]onclusory allegations with no accompanying evidentiary support"); *Morris v. Motley*, No. 3:07-CV-P420-S, 2007 WL 3171538, at *1 (W.D. Ky. Oct. 26, 2007) (dismissing habeas petition lacking factual allegations or other specifics).

20

*Grimes v. Mays*, No. 3:19-CV-00585, 2022 WL 3582487, at *9 (M.D. Tenn. Aug. 19, 2022), *report and recommendation adopted*, 2022 WL 4097711 (M.D. Tenn. Sept. 7, 2022).

To the extent that the Petition in this case is attempting to present a federal excessive-sentencing claim that echoes the claim the TCCA denied on its merits on direct appeal, *see State v. Solomon*, 2018 WL 5279369, at *6–8, it does so in only the most superficial fashion, without the support of any factual material to indicate how the state court may have gotten it wrong vis-à-vis AEDPA's standards. The liberal construction generally owed to pro se pleadings does not require this court to scour the record in order to flesh out the bare bones of the Petition with supporting facts. *See Grimes*, 2022 WL 3582487, at *9 (citing *Adams v. Armontrout*, 897 F.2d 332, 333 (8th Cir. 1990), and *Mills v. Larose*, No. 1:13CV1059, 2015 WL 687829, at *11 (N.D. Ohio Feb. 18, 2015)); *see also Erwin v. Edwards*, 22 F. App'x 579, 580 (6th Cir. 2001) ("Liberal construction does not require a court to conjure allegations on a litigant's behalf[.]"). Nor could additional facts be pled by way of a reply brief, which is not itself a pleading and could not serve to amend the Petition. *Grimes*, 2022 WL 3582487, at *10. The Petition's claim of excessive sentencing fails to meet the demands of Habeas Rule 2(c) and is subject to dismissal for this procedural reason.

Moreover, even if the Petition had adequately pled a claim of excessive sentencing in violation of federal law, any such claim would be unexhausted. From a review of the TCCA's decision on direct appeal and the petitioner's appellate brief (Doc. No. 9-5), there is no indication that the excessive-sentencing claim considered there was raised as a federal claim. Rather, the claim exhausted before the TCCA was that "the trial court failed to sentence [the petitioner] in accordance with the [Tennessee] Criminal Sentencing Reform Act of 1989." *State v. Solomon*, 2018 WL 5279369, at *6; (*see* Doc. No. 9-5 at 5, 10–13). This claim "of state court error in the

21

application of state sentencing law" would not be cognizable in this federal forum. *Laster v. Koenig*, No. 2:21-CV-02511-VBF (SP), 2022 WL 4099222, at *3 (C.D. Cal. Mar. 17, 2022), *report and recommendation adopted*, 2022 WL 4097320 (C.D. Cal. Sept. 6, 2022); *see Floyd v. Alexander*, 148 F.3d 615, 619 (6th Cir. 1998) (claim based on change from concurrent to consecutive sentences "alleged a violation of a state law that is not cognizable in a federal habeas corpus proceeding"). And because the petitioner's filing before the TCCA did not "alert[] that court to the federal nature" of his sentencing claim, *Baldwin v. Reese*, 541 U.S. 27, 29 (2004), no federal excessive-sentencing claim was fairly presented for purposes of exhaustion. *See Goss v. Bomar*, 337 F.2d 341, 343 (6th Cir. 1964) (affirming denial of habeas relief on exhaustion grounds where Tennessee Supreme Court's opinion "deal[t] only with state issues" in resolving claim that life sentence was excessive); *Everett v. Leibach*, No. 2:15-CV-02099-MSN-tmp, 2019 WL 13275820, at *17 (W.D. Tenn. Nov. 18, 2019). Since no state remedy remains available, any federal constitutional claim based on the petitioner's sentence is barred by procedural default. *Everett*, *supra*. Habeas relief cannot be granted on this second claim of the Petition.

### 3. Defaulted claims of ineffective assistance of counsel

The petitioner asserts that his remaining claims of trial counsel's ineffectiveness were defaulted during the post-conviction review process. Although the claims had been raised before the post-conviction trial court, the petitioner argues they could not be effectively appealed because his appointed post-conviction attorney failed to build a record that would allow for appellate review. (Doc. No. 1-1 at 11.)

"There is no constitutional right to an attorney in state post-conviction proceedings," and therefore "a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings." *Coleman*, 501 U.S. at 752 (citations omitted). Rather, petitioners "bear the risk of

attorney error that results in a procedural default" during such collateral proceedings, *id.* at 752–53, with one exception: "Inadequate assistance of counsel *at initial-review collateral proceedings* may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Martinez v. Ryan*, 566 U.S. 1, 9 (2012) (emphasis added). The petitioner in the instant case invokes the *Martinez* exception to excuse the default of his claims of trial counsel's ineffectiveness. (*See* Doc. No. 1-1 at 10.)

However, the *Martinez* exception is not applicable to Petitioner's defaulted claims of ineffective trial counsel, because those claims were not defaulted "at initial-review collateral proceedings," but on appeal from the denial of post-conviction relief. *See Atkins v. Holloway*, 792 F.3d 654, 661 (6th Cir. 2015) (holding that "a claim of ineffective assistance of state appellate collateral counsel does not provide cause to excuse the procedural default of the claims [petitioner] raised below during initial collateral proceeding"; although failure to appeal denied claims "may have been the product of attorney error, attorney error at state post-conviction appellate proceedings cannot excuse procedural default" under *Martinez*) (quoting *West v. Carpenter*, 790 F.3d 693, 699 (6th Cir. 2015)).

As the petitioner acknowledges, all of his ineffective-assistance-of-trial-counsel claims (the claims to which *Martinez* could in principle apply),[4] as well as his claim of ineffective failure to appeal his consecutive sentencing, were presented (implicitly or explicitly) in counsel's amended petition before the post-conviction trial court (Doc. No. 9-9 at 30–31), and/or at the post-

---

[4] As previously recited, those ineffective-assistance-of-trial-counsel claims are: (a) failure to challenge the admissibility of the toxicology report and its inclusion in the presentence report; (b) failure to file a motion to suppress the results of the non-consensual blood test; (c) failure to offer proof at the sentencing hearing of the petitioner's potential for rehabilitation; (d) failure to challenge the propriety of the TBI agent's testimony regarding the facts of the drugs in the petitioner's blood; (e) failure to challenge the trial court's improper calculation of pretrial jail credits; and (f) failure to seek to withdraw the petitioner's guilty plea when the State failed to honor its previous agreement to concurrent sentencing. (Doc. No. 1-1 at 12–14.)

conviction evidentiary hearing (Doc. No. 9-10). These claims were then decided in the court's order denying relief at the initial level of post-conviction review. (Doc. No. 9-9 at 39–44.) Post-conviction counsel subsequently gave notice in the trial court of his intent to raise all these issues (save for the issue of whether trial counsel was ineffective for failing to seek to withdraw the petitioner's plea) on appeal (*id.* at 71–73), but his appellate brief ultimately raised only the issue of trial counsel's ineffectiveness in failing to seek recusal of the sentencing judge. (Doc. No. 9-13.) While the petitioner frames this decision as the result of an ineffective lack of development of the issues in the post-conviction evidentiary hearing (*see* Doc. No. 1-1 at 11), rather than a matter of appellate strategy, the record does not support this proposition. In any event, *Martinez* does not apply to excuse the default of a claim that was properly raised but underdeveloped in initial post-conviction proceedings. "[P]ost-conviction counsel's failure to take all possible steps to fully develop a claim cannot be the 'cause' of a default as long as counsel properly raised the claim and made a good-faith effort in presenting it." *Hugueley v. Mays*, 964 F.3d 489, 500 (6th Cir. 2020). *See also Rogers v. Mays*, 69 F.4th 381, 396 (6th Cir. 2023) ("If post-conviction counsel negligently fails to develop the state-court record, that failure is attributed to the petitioner.") (citing *Shinn v. Ramirez*, 596 U.S. 366, 383–84 (2022)).

Because the trial-counsel claims to which *Martinez* might otherwise apply were defaulted when post-conviction counsel failed to appeal from their denial by the post-conviction trial court, their default cannot be excused. *Atkins*, 792 F.3d at 661. These claims, as well as the petitioner's defaulted claim that counsel was ineffective on direct appeal, are therefore barred from review on their merits in this court.

## IV. Conclusion

For the foregoing reasons, the Petition will be **DENIED** and this action will be **DISMISSED** with prejudice.

The court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to a § 2254 petitioner. Rule 11, Rules Gov'g § 2254 Cases. A petitioner may not take an appeal unless a district or circuit judge issues a COA. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA may issue only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A "substantial showing" is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citations and internal quotation marks omitted). "[A] COA does not require a showing that the appeal will succeed," but courts should not issue a COA as a matter of course. *Id.* at 337.

Because reasonable jurists could not debate whether the petitioner's claims should have been resolved differently or are deserving of encouragement to proceed further, the court will **DENY** a COA. The petitioner may seek a COA directly from the Sixth Circuit Court of Appeals. Rule 11(a), Rules Gov'g § 2254 Cases.

An appropriate order will enter.

_____
Aleta A. Trauger
United States District Judge

25